UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **BARBARA R. BENTON** | \* | **CIVIL ACTION NO. 14-2387** |
| **VERSUS** | \* | **JUDGE ROBERT G. JAMES** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | \* | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Barbara Benton protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on June 15, 2012.  (Tr. 163-174).[1]  She alleged disability as of February 23, 2011, because of chronic obstructive pulmonary disorder ("COPD"), chronic asthma, tongue and throat swelling, high blood pressure, deep vein surgery, stomach tumors, congestive heart failure, inability to stand, bend, or overhead reach, depression, swollen feet, uses oxygen to sleep, and daily breathing treatments.  (Tr. 203).  The state agency denied the claims at the initial stage of the administrative process.  (Tr. 69-95).

---

[1] Benton filed prior disability applications on March 28, 2011.  *See* Tr. 57, 70.  The claims were denied by an Administrative Law Judge on December 9, 2011, and not further appealed.  *See* Tr. 54-65, 70.

Thereafter, Benton requested and received an April 15, 2013, hearing before an Administrative Law Judge ("ALJ").  (Tr. 23-53).  In a May 15, 2013, partially favorable decision, the ALJ determined that, beginning on December 3, 2012, Benton was disabled under the Social Security Act.  (Tr. 7-18).  However, for the period from the alleged onset of disability through December 2, 2012, the ALJ held that Benton was not disabled, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in significant numbers in the national economy.  *Id.*

Benton appealed the adverse decision to the Appeals Council.  However, on June 18, 2014, the Appeals Council denied her request for review; thus, the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On July 28, 2014, Benton filed the instant complaint for judicial review of the unfavorable portion of the Commissioner's decision.  Succinctly re-stated, she alleges the following errors,

1)   The ALJ's residual functional capacity assessment is not supported by substantial evidence;

2)   The ALJ failed to meet his burden at step five of the sequential evaluation process; and

3)   The ALJ erred by failing to address whether plaintiff's "borderline" age warranted an earlier onset of disability.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520. The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

**I.   Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Benton did not

engage in substantial gainful activity during the relevant period. (Tr. 13). At step two, he found that she suffers severe impairments of COPD, hypertension, and asthma. *Id*.[2] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 14).

## II.     Residual Functional Capacity

The ALJ next determined that Benton retained the residual functional capacity ("RFC") to perform sedentary work, except that she could engage in postural activities only occasionally; she needed a cane to ambulate; she required a sit/stand option; and she had to avoid temperature extremes and dangerous moving machinery. (Tr. 13-14).[3]

## III.    Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Benton was unable to perform her past relevant work. (Tr. 16-17). Accordingly, he proceeded to step five. At this step, the ALJ noted that Benton had a high school education, with the ability to communicate in English. *Id*. Transferability of skills was immaterial prior to December 3, 2012. *Id*. He further noted that Benton was a younger individual (45-49 years old), but that on December 3, 2012, she changed age category to an individual closely approaching advanced age,

---

[2] The ALJ found that Benton's history of polyps was not a severe impairment. *Id*.

[3] Sedentary work entails:
>  . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

and that as a result, consideration of her vocational factors mandated a finding of disabled by direct application of Medical-Vocation Rule 201.12, Table 1, Appendix 2, Subpart P, Regulations No. 4. *Id.*

However, for the period prior to December 3, 2012, given Benton's vocational factors, and if she had an RFC for the full range of sedentary work, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rule 201.21, Table 12, Appendix 2, Subpart P, Regulations No. 4. *Id.* Nevertheless, because Benton's RFC included non-exertional limitations, the ALJ consulted a vocational expert ("VE") to determine whether, and to what extent her additional limitations eroded the occupational base for sedentary work. *Id.* In response, the VE identified the representative jobs of information clerk, *Dictionary of Occupational Titles* ("DOT") Code # 237.367-034; and scanner operator, DOT Code # 249.587-018, that were consistent with the ALJ's RFC and Benton's vocational profile. (Tr. 16-17, 50-51).[4]

## **Analysis**

As an initial matter, and as recognized by plaintiff, the relevant time span at issue is effectively for a "closed" period from December 10, 2011, – the day after the final denial of Benton's prior application -- through December 2, 2012, – one day before Benton's disability onset date, as determined by the current ALJ in connection with the instant application.

---

[4] The VE testified that for the information clerk position, there were 198,626 positions nationally and 16,980 jobs regionally. (Tr. 50-51). For the scanner operator job, there were 128, 313 jobs nationally and 5,470 such jobs regionally. *Id.* This incidence of work constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

I.        **Residual Functional Capacity**

In his decision, the ALJ reviewed the available evidence, including the hearing testimony,

the medical treatment history, and the findings of the treating, consultative, and agency

physicians.  (Tr. 14-16).  In deriving plaintiff's RFC, he determined that,

> [p]rior to December 3, 2012, the claimant's allegations are not considered fully
> credible.  Medical records show the claimant has a history of non-compliance with
> medication . . .  No physician suggested that the claimant was disabled prior to
> December 3, 2012.  She maintained the ability to ambulate without assistance.
> Her grip strength was 5/5.  Her activities of daily living were also not significantly
> limited.  Prior to December 3, 2012, the claimant maintained the ability to
> perform a reduced range of sedentary work.
>
> As for opinion evidence, significant weight is granted James Williams, M.D.,
> whose assessment is consistent with other findings in the case record.  Great
> weight is also afforded to consultative examiner, Dr. Lopez, in accordance with
> SSR 96-5p.

*Id*.[5]

Plaintiff contends that the ALJ erred because, despite purporting to assign "great weight"

to Dr. Lopez's opinion, he effectively rejected, without discussion, Dr. Lopez's five pound

maximum on lifting and carrying objects.[6]  Indeed, under the regulations, the ALJ must consider

---

[5]  Williams is a non-examining agency physician.  On September 24, 2012, he opined that
plaintiff had an RFC for light work.  (Tr. 75-77, 325).

[6]  Benton underwent a consultative physical examination administered by Julana Lopez,
M.D., on August 16, 2012,   (Tr. 309-312).  Benton reported that she could walk about 40 feet
before becoming short of breath.  *Id*.  In addition, if she stood too long, her feet and legs became
swollen.  *Id*.  She admitted, however, that she was independent in her activities of daily living.
*Id*.  She also denied back, neck, shoulder, or other joint pain.  *Id*.  She is right-handed. *Id*.  Upon
examination, Benton exhibited no effusion, swelling, heat, or erythema of any joint, no structural
deformities or tenderness, and a negative straight leg raise.  *Id*.  Her motor strength was 5/5 in all
muscle groups.  *Id*.  Also, her grip strength was 5/5 bilaterally, with dexterity intact.  *Id*.  She
demonstrated full range of motion in all joints (including her wrists).  *Id*.  She had normal gait
and station, was able to squat, but painfully, and bend at the waist.  *Id*.  Dr. Lopez diagnosed
COPD per patient, CHF (congestive heart failure) per patient, chronic thigh numbness, shortness
of breath upon exertion, and obesity. *Id*. Despite these impairments, Lopez opined that Benton

the findings and opinions of the state agency medical and psychological consultants. 20 C.F.R. § 404.1527(e)(2)(I). Moreover, although "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion,"[7] the ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted). In addition, the ALJ is not permitted to simply "pick and choose" only the evidence that supports his decision. *Loza, supra*.

The court agrees that if Dr. Lopez intended for her five pound lifting and carrying limitation to restrict Benton from *ever* lifting and carrying more than five pounds, then the limitation potentially conflicts with the exertional requirements for sedentary work,[8] and the ALJ was required to explain his reason for effectively discounting this finding. Any error, however, was harmless in this case, because, by plaintiff's own estimate, she could lift and carry "maybe five, 10 pounds . . ." despite problems with her hands. (Tr. 42). In her brief, plaintiff argues that her lifting and carrying estimate was just that – an estimate – and that when her testimony is read together with Dr. Lopez's opinion, it confirms an ability to lift and carry no more than five pounds. *See* Pl. Reply Memo., pg. 2 n.1.

The court notes, however, that plaintiff self-limited her ability to lift and carry objects as a result of her hand problems, i.e., carpal tunnel syndrome – an impairment that was not

---

should be able to sit for eight hours, stand for four hours, and walk for two hours in 15 minute intervals at a slow pace during a workday. *Id*. She also could lift or carry objects weighing up to five pounds because of exertional shortness of breath. *Id*. Finally, there were no restrictions on Benton's ability to read, drive, or to perform fine motor tasks such as writing. *Id*.

[7] *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation and internal quotation marks omitted).

[8] *See* SSR 96-9p, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK--IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE OF SEDENTARY WORK.

diagnosed (and for which she did not begin to receive treatment for) until January 2013 – after the relevant period.  *See* Tr. 336.[9]  Rather, when asked how much she could lift throughout the day, Benton replied that she had recently lifted a "24 – it was a  – I think it was a 24 – the bottled water . . ." (Tr. 42).  In all likelihood, plaintiff was referring to a 24 pack of bottled water, which, in the court's experience, well exceeds ten pounds.  Tr. 42.[10]

Plaintiff also faults the ALJ for his failure to adopt a limitation stemming from plaintiff's alleged need to keep her legs elevated, per instructions from her treating physician, Prashanta Koirala, M.D.  (Tr. 331-332).  At the hearing, however, plaintiff's counsel asked the VE whether the jobs identified by the VE would be impacted by a claimant's need to elevate her legs four or more times during an eight hour work day.  The VE replied that,

[w]ell, I believe it would be based on the height that the person would have to

---

[9]  Plaintiff contends that her bilateral carpal tunnel syndrome constitutes an additional impairment that warranted manipulative limitations not recognized by the ALJ.  However, Dr. Lopez did not document any hand or wrist limitations during her examination in August 2012. (Tr. 309-312).  Benton also did not list wrist pain or hand impairment when she completed disability paperwork in June-July 2012.  *See* Tr. 203, 216. Although plaintiff complained in February 2013 of pain and numbness in both hands over the past year, Tr. 387, she reported in January 2013, that the pain had *progressively* worsened only over the past six months.  (Tr. 336). There is no mention of wrist or hand pain in plaintiff's treatment records for October-November 2012, including an October 6, 2012, emergency room visit for acute left arm pain following a motor vehicle accident.  *See* Tr. 344-345, 351-356.

In sum, there is ample record evidence to support the ALJ's implicit determination that plaintiff's bilateral carpal tunnel syndrome was a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition . . ."  *See Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)); *see also Hammond v. Barnhart*, 132 Fed. Appx. 6 (5th Cir. May 17, 2005) (unpubl.) (medical evidence that post-dates the ALJ's decision is only material if it addresses the severity of the claimant's pre-hearing condition).

[10]  To the extent that plaintiff's difficulty carrying heavy objects is attributable to her use of an ambulatory assistive device, the court notes that plaintiff was not prescribed a cane until February 2013 – again, after the relevant period at issue.  *See* Tr. 41.

>elevate the leg, and if it's a footstool at a table, it really wouldn't have any adverse impact. If it would be at waist high or above, I think it would be very difficult to perform anything in the sedentary realm at such an elevation.

(Tr. 51-52).

Benton explained, however, that she elevated her legs either by sitting in a recliner, or if she was on the couch, by propping her feet on a "little bitty" baby chair. (Tr. 39-40). Plaintiff's counsel posits that someone sitting on a couch necessarily sinks to a level that results in the legs rising above waist-level. (Pl. Reply Memo., pg. 4, n.2). This general observation, however, is undermined by plaintiff's use of a "little bitty" baby chair, which, by design, is quite low to the ground. In any event, Dr. Koirala said only that Benton should elevate her legs, not that her legs needed to be elevated waist high or above. Thus, any error was harmless.

## II.    Step Five

Plaintiff raises several issues related to the ALJ's step five determination. First, she contends that the ALJ erred because his hypothetical to the VE did not include the five pound lifting limitation endorsed by Dr. Lopez or any manipulative limitations from her carpal tunnel syndrome. However, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the ALJ's hypothetical to the VE faithfully incorporated all of the limitations recognized in his residual functional capacity assessment, and that assessment is supported by substantial evidence. *See* discussion, *supra*.[11]

Plaintiff next argues that the VE's testimony was flawed because the "information clerk"

---

[11] Of course, insofar as the ALJ's hypothetical should have included the need to elevate legs below waist-level four or more times during the workday, the error was harmless because plaintiff's counsel elicited testimony from the VE confirming that this limitation did not impact her testimony. *See* Tr. 51-52 and discussion, *supra*.

job identified by the VE is performed at the "light" exertional level, contrary to the ALJ's hypothetical and the plaintiff's RFC. *See* Pl. Brief, Exh. 1. Even so, however, any error was harmless because the remaining job identified by the VE, scanner operator, *is* performed at the sedentary exertional level. (Pl. Brief, Exh. 2). Moreover, the incidence of work for scanner operators constitutes a significant number of jobs within the "national economy." *See* discussion, *supra*.[12]

Finally, plaintiff argues that the ALJ erred by failing to consider whether she was in a "borderline situation" that merited an earlier disability onset date. The regulations provide that,

> [w]e will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b), 416.963(b).

The regulations do not specifically define a "borderline situation." *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988). However, the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX"), requires application of a two part test to identify a "borderline situation":

> (1) Determine whether the claimant's age is within a few days or a few months of a higher age category.
>
> (2) If so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."
>
> If the answer to one or both is "no," a borderline age situation either does not exist

---

[12] Plaintiff seems to argue that because the VE identified only two jobs, the court cannot simply exclude the job challenged by plaintiff, and rely on the remaining, untainted job of scanner operator to ratify the ALJ's decision. However, the Fifth Circuit has tacitly approved this practice. *See Zimmerman v. Astrue*, 288 F. App'x 931, 938 (5th Cir. 2008) (unpubl.) (plaintiff's argument lacked merit because even if the court disregarded the availability of the challenged job, the remaining jobs exist in substantial numbers in the national economy).

11

>or would not affect the outcome. The adjudicator will then use the claimant's chronological age.
>
>If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. (Use of the higher age category is not automatic.) To decide which age category to use, take a "sliding scale" approach.  Under this approach, the claimant must show progressively more additional vocational adversity(ies) — to support use of the higher age — as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.

HALLEX II-5-3-2.

Although the HALLEX does not carry the authority of law, "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.  If prejudice results from a violation, the result cannot stand."  *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citations and internal quotation marks omitted).

In this case, the ALJ did not specifically address whether plaintiff's borderline age situation warranted an earlier disability onset date.  However, his hypothetical to the VE assumed an individual of the claimant's age (i.e., 50 years old at the time of the hearing, Tr. 26), education, work experience, and with an RFC for a reduced range of sedentary work.  (Tr. 49-50).  Despite these vocational adversities, the VE opined that there were jobs in the regional or national economy that the claimant could perform.  *Id*.  The ALJ's reliance on VE testimony (based on a hypothetical that assumed plaintiff's age during the pertinent period) satisfies the ALJ's obligation to ensure that age categories are not "mechanically" applied in a borderline situation to the claimant's detriment.  *Singleton v. Astrue*, Civil Action No. 11-2332, 2013 WL 460066, at *8-9 (N.D. Tex. Feb. 7, 2013); *see also Stout v. Astrue*, Civ. Action No. 10-4466, 2012 WL 1020179, at *10 (E.D. La. Feb. 22, 2012), report and recommendation adopted, 2012

WL 1020174 (E.D. La. Mar. 26, 2012) (citing *inter alia*, *Lockwood v. Comm. of Soc. Sec. Adm.*, 616 F.3d 1068, 1071–72 (9th Cir.2010), *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 402 (6th Cir. 2008), and *Stanridge–Salazar v. Massanari*, 254 F.3d 70, 2001 WL 502506 at *3 (5th Cir.2001).[13] Accordingly, plaintiff has not demonstrated material prejudice stemming from the absence of specific discussion of her borderline situation.[14]

## Conclusion

The evidence in this case was by no means uniform and could have supported a different outcome. Such conflicts in the evidence, however, are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton, supra*.[15] That is not to say that the

---

[13] In *Stout*, the court ultimately remanded the case because the hypothetical to the VE did not include plaintiff's age and other vocational factors. *See Stout, supra; see also Manning v. Colvin*, Civil Action No. 13-2178, 2014 WL 266417, at *7 (N.D. Tex. Jan. 24, 2014) (no indication that the ALJ considered plaintiff's borderline age); *Parker v. Colvin*, Civil Action No. 13-0054, 2014 WL 4639452, at *13-14 (S.D. Miss. Sept. 16, 2014) (reversing and remanding where hypothetical to VE did not include the claimant's specific age); *Horsley v. Colvin*, Civil Action No. 12-0273, 2014 WL 1213467, at *5 (N.D. Miss. Mar. 24, 2014) (same).

[14] "Procedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

[15] Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here.

Commissioner's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the claimant was not disabled under the Social Security Act for the period at issue, is supported by substantial evidence and remains free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 10th day of July 2015.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE